UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 11-11422-RWZ


STONEWOOD CAPITAL MANAGEMENT, INC.

v.

GINER, INC.,
GINER ELECTROCHEMICAL SYSTEMS, L.L.C.,
and A. SILVANA GINER

ORDER

October 18, 2011

ZOBEL, D.J.

On April 6, 2011, Stonewood Capital Management Inc., a private equity firm, Giner, Inc., an electrochemical engineering company, and Giner Electrochemical Systems, LLC (a Giner subsidiary) (jointly "Giner" or "the Company"), signed a "letter of intent"[1] ("LOI") expressing plaintiff's "indication of interest to acquire all of the assets and business" of Giner. The LOI laid out, inter alia, the anticipated purchase price, the methodology for the treatment of Giner's existing cash reserves and liabilities and valuation of inventory, the fate of Giner's employees, as well as deal contingencies and

---

[1] While the complaint does not attach the LOI, defendants' memorandum of law in support of their motion to dismiss does (Docket # 15 Ex. A). The parties do not dispute the existence or authenticity of the LOI, and all of plaintiff's claims are based directly on the language of the LOI.  Therefore, it is proper for the court to consider the LOI at the motion to dismiss stage. "When ruling on a motion to dismiss, the court may consider documents incorporated by reference in the complaint, matters susceptible to judicial notice, and matters of public record." Giragosian v. Ryan, 547 F.3d 59, 65-66 (1st Cir. 2008).

certain representations and warranties. The LOI also contained provisions regarding due diligence, confidentiality, negotiation exclusivity and cost bearing.

The exclusivity provision in Paragraph 7 of the LOI provides in relevant part:

> The Buyer will have an exclusive period to complete its due diligence and proceed to Closing … the exclusivity period will terminate on July 5, 2011… [d]uring this period of exclusivity, the Company and its owners, employees, agents or representatives will not negotiate for, solicit or accept any offer to sell the Company or its assets ....

However, the previous paragraph, Paragraph 6 explicitly states:

> This letter is an expression of intent only and other than the obligations regarding confidentiality and expenses set forth in the following paragraph, it is not a binding contract.

Plaintiff alleges that despite Paragraph 6, the exclusivity provision contained in Paragraph 7 is binding on the parties. It further states that on June 22, 2011, after the LOI had been executed but before the exclusivity period terminated, A. Silvana Giner (a director of Giner and daughter of its founder and majority shareholder, José Giner) communicated to Giner's CEO that she and her family desired to execute a different, but substantially similar, transaction that would allow her to control Giner.  As a result, the Company ceased negotiations with plaintiff and did not complete the transaction contemplated by the LOI.

The complaint is in five counts and alleges that the Company breached the LOI's exclusivity provision (Count I) and its underlying covenant of good faith and fair dealing (Count II) by entertaining Ms. Giner's deal. The complaint also alleges that Ms. Giner tortiously interfered with a contract (Count IV) and a prospective economic advantage

(Count V), and that plaintiff relied on the exclusivity provision to its detriment (Count III).

Defendants have moved to dismiss all counts.

## I.     Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Facial plausibility is shown "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Plausibility "is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. Under this standard, "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. "The interpretation of an unambiguous contract is a matter of law, the review of which is limited to 'the plain meaning of the language used.'" Barrett Paving Materials, Inc. v. Continental Ins. Co., 488 F.3d 59, 66 (1st Cir. 2007).

## II.    Analysis

### A.     Contract Claims

The full paragraph, Paragraph 7, which contains the confidentiality, exclusivity and expense provisions, states:

> The Company and the Buyer (together with their respective owners, employees, agents and representatives) agree to keep all of the terms, conditions and other subject matter of this letter confidential, and agree not to disclose the terms, conditions or other subject matter of this letter

without the other party's prior written consent. The Buyer will have an exclusive period to complete its due diligence and proceed to Closing until 45 days after the date on which the Company's audited financial statements described below are completed and delivered to the Buyer or 90 days from the date of this letter, whichever is later, provided that to the extent that the audited financial statements are not delivered by May 31, 2011, the exclusivity period will terminate on July 5, 2011. During this period of exclusivity, the Company and its owners, employees, agents or representatives will not negotiate for, solicit or accept any offer to sell the Company or its assets or provide business plans or any material information regarding the Company or anyone other than the Buyer without the Buyer's written consent, and the Company will continue to operate its business in its customary and ordinary course.  Other than with respect to the audit described below, the parties will pay their respective costs and expenses of the transactions contemplated hereby.

The parties agree that the first sentence, dealing with confidentiality, and the last sentence, dealing with costs and expenses, in Paragraph 7 are binding; they disagree on whether the middle three sentences, the exclusivity language, is also binding.

In support of their motion to dismiss, defendants point to Paragraph 6 (at p. 2 above) expressly starting that the LOI is not a binding contract except for the sentences pertaining to confidentiality and expenses, which are not at issue here. Plaintiff, on the other hand, argues that the exclusivity provision is simply an adjunct to the larger and binding confidentiality provision and thus by the plain terms of Paragraph 6 is binding as well.

As a matter of law the LOI is clear and unambiguous and states unequivocally that the only provisions binding both parties are those addressing confidentiality and expenses. Combined Energies v. CCI, Inc., 514 F.3d 168, 173 (1st Cir. 2008) ("Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent.")

The LOI treats as binding <u>only</u> the confidentiality and expenses provisions in Paragraph 7. This deliberate isolation leads to only one interpretation, namely that the confidentiality and expenses provisions in Paragraph 7 are binding, while the remaining sentences of that paragraph are not. Any other reading of Paragraph 6 would render the specific mention of the confidentiality and expenses provisions superfluous. <u>Babcock Borsig Power GmbH v. Babcock Power, Inc.</u>, 2006 WL 1581742,*3 (D. Mass. 2006). ("Under Massachusetts law, courts avoid interpreting contracts in a manner that would render express terms superfluous.")

Plaintiff also sues the Company for breach of the obligation of good faith and fair dealing and Ms. Giner for tortious interference with a contract. In order to establish a breach of the obligation of good faith and fair dealing a binding contract must be established, <u>Hutchins v. Zoll Medical Corp.</u>, 430 F.Supp.2d 24, 34 (D. Mass. 2006) ("obligation of good faith and fair dealing … presupposes the formation of a contract"), the same is true for tortious interference with a contract <u>Cina Fire Underwriters Co. v. MacDonald & Johnson, Inc</u>., 86 F.3d 1260, 1267 (1st Cir. 1996) ("party [claiming tortious interference with a contract ] must prove … that there was a contract with a third party..."). Here, the exclusivity clause did not create a binding agreement; therefore, there can be no breach of the underlying obligation of good faith and fair dealing, or tortious interference with respect to it.

The motion to dismiss is allowed as to Counts I, II, and IV.

**B.     Detrimental Reliance**

As to Count III the complaint alleges the defendants "consistently represented that the Company would negotiate in good faith with Stonewood Capital to complete the transaction set forth in the Letter of Intent" and that "as a proximate result of its reliance on the promises made [plaintiffs have suffered damages]."

"Massachusetts law recognizes that a promisee's reasonable and detrimental reliance on a promise may serve as a substitute for consideration and render the promise 'enforceable pursuant to a traditional contract theory,' but only if the promisee can prove 'all the necessary elements of a contract other than consideration.'" Kiely v. Raytheon Co., 105 F.3d 734 (1st Cir. 1997). Here, however, plaintiff cannot establish any promise that would be binding "but for" consideration because the LOI does not create any obligations on either party to consummate a final transaction. Santoni v. Federal Deposit Ins. Corp., 677 F.2d 174, 179 (1st Cir. 1982) ("A mere expression of future intention … does not constitute a sufficiently definite promise to justify reasonable reliance thereon"). Even assuming plaintiff relied on defendants' "obligation to negotiate in good faith" exclusively with plaintiff, such reliance is unreasonable for the same reason – the deal could have been tabled at any time for any reason by either party.

### C. Tortious Interference with an Actual or Prospective Business Relationship

In order to prevail on a tortious interference with business advantage claim, a plaintiff must prove (1) a business relationship or contemplated contract of economic benefit; (2) the defendant's knowledge of such relationship; (3) the defendant's interference with it through improper motive or means; and (4) the plaintiff's loss of advantage directly resulting from the defendant's conduct.  A plaintiff need not prove that it had a

<u>binding contract, rather a probable future business relationship anticipating a reasonable expectancy of financial benefit is sufficient</u>.

<u>Boyle v. Douglas Dynamics, LLC</u>, 292 F.Supp.2d 198, 213 (D. Mass. 2003) (internal citations and quotations omitted) (emphasis added).

In this case, plaintiff sufficiently alleges that there was a contemplated contract of economic benefit. The LOI contained a detailed offer of purchase, and a fairly particular set of guidelines setting forth how the parties were to exchange information and negotiate a possible deal. If nothing else, the LOI was the beginnings of a "<u>contemplated</u> contract of economic benefit."

Defendants next argue that by virtue of Ms. Giner's status as a director, plaintiff must establish "actual malice" by proving that Ms. Giner employed "improper motive or means." However, this heightened standard is only applicable to corporate officials acting within the scope of their corporate responsibilities. <u>Blackstone v. Cashman</u>, 448 Mass. 255, 261-262 (2007). Here, plaintiff alleges that Ms. Giner was acting for her own account, not on behalf of the company. Therefore, the "actual malice" standard is not applicable.    While some measure of impropriety beyond the mere interference itself is required to establish a tortious interference claim, <u>United Truck Leasing Corporation v. Geltman</u>, 406 Mass. 811, 816 (1990), plaintiff meets its burden. It alleges that Ms. Giner, relying improperly on confidential information contained in the LOI, interfered with plaintiff's contemplated economic benefit by offering a competing deal to purchase the Company on substantially the same terms as the LOI – a deal designed to enable her to exercise control over the Company – and as a result caused plaintiff damages. This is enough.

The motion is denied as to this count.

## III. Conclusion

Defendants' motion to dismiss (Docket # 14) is ALLOWED as to Counts I, II, III and IV and DENIED as to Count V.

   October 18, 2011                        /s/Rya W. Zobel
        DATE                                RYA W. ZOBEL
                                                UNITED STATES DISTRICT JUDGE